ERNESTINA GIROD LUBE ET AL., Plaintiffs and Appellees, *v.* HILDA ORTIZ ROLÓN ET AL., Defendants and Appellants.

No. CE-66-1.     Decided May 3, 1967.

*Carlos J. Irizarry Yunqué* for appellants. *Ubaldo Aponte* for appellees.

Second Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, Mr. Justice Santana Becerra, and Mr. Justice Dávila.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

Plaintiffs-appellees, heirs of Girod, filed a civil action in the District Court, Guayama Part, against appellants and alleged that on December 30, 1954 they sold to Vicente Colón

Morales a 180-square-meter lot; that due to an involuntary error, there being no consideration, plaintiffs transferred to Colón Morales a 454-square-meter lot; that the defendants, subsequent purchasers and owners of the property at the time the complaint was filed, wrongfully withheld, encroached, and possessed against plaintiffs' will a parcel of land of 274 square meters within the perimeter of the 454-square-meter lot, and that plaintiffs were the sole and exclusive owners of said 274-square-meter parcel of land. They requested judgment ordering defendants to surrender to them the possession of the aforementioned 274-square-meter lot.

Defendants called as warrantors Antonio Amaro and his wife, the persons from whom they acquired the property. The latter appeared in the suit and called as warrantors Vicente Colón and his wife, the persons from whom, in turn, they acquired the property. Colón Morales appeared in his own right and said that he accepted the facts alleged in the complaint and stated that he had notified Amaro that he only sold him the lot "enclosed within the fencing wire and iron pipes which were the boundary of the lot acquired by him"; that Amaro would explain the title in the deed with plaintiffs for the purpose of establishing the correct area bought, and that he later sold the lot as it appeared erroneously described in all the deeds.

The other defendants denied the facts in the complaint, as well as Colón Morales' allegations. They raised special defenses of prescription, laches on the part of plaintiffs, and of estoppel to restrain the latter from going against their own actions.

With the evidence presented at the hearing the parties submitted the case for the determination of the special defenses. The District Court, Guayama Part, rendered judgment declaring that the complaint had prescribed, either under § 1361 of the Civil Code, 1930 ed., or under its § 1253. On appeal, the Superior Court, Guayama Part, reversed, on

the ground that the case involved an imprescribable question of nonexistence of contract.

The question in issue requires a recital of the evidence.

(1) By deed No. 256 executed in Guayama on December 30, 1954, before Notary Ubaldo Aponte, plaintiffs-appellees declared they were owners of a parcel of land 83 varas front and 57 varas deep, situated on Jobos Street in Guayama, duly recorded in the Registry of Property. In the fourth averment of the deed the appellee-vendors stated:

"That the parties of the first part, after the approval of the Puerto Rico Planning Board dated June twenty-five, nineteen hundred and fifty-four, in case number fourteen thousand, three hundred forty-four (14,344), segregated from the lot above-described, which is the principal property, the lot described below: ............................................... "URBAN: Lot situated in the city of Guayama, consisting of four hundred fifty-four square meters bounded on the North, along twelve meters, by Enrique González Street; on the South, along nineteen meters and eighty centimeters, by land owned by the Department of Education; on the East, along thirty-seven meters fifty centimeters, by the principal property from which it is segregated, owned by the heirs of Ernesto Girod Denis; and on the West, along twenty-eight meters, by land owned by the Department of Education."

The segregated lot was assessed at $800 and thus segregated it was sold to Vicente Colón Morales for that amount, the notary having attested that the money was delivered in his presence. Attached to the deed of sale there appears a Report of the Puerto Rico Planning Board of June 25, 1954, approving the aforementioned segregation, in which the segregated lot was identically described as in the former description. Said report states that the subdivision was submitted by the heirs of Ernesto Girod, through Vicente Colón Morales.

(2) By deed No. 7 executed in Guayama on February 16, 1955, before Notary Tomás Bernardini Palés, Vicente Colón Morales sold this property, as it was previously described,

to Antonio Amaro. Vendor Colón Morales stated that on the lot he had a house 20 feet long by 34 feet deep under construction, almost finished, and in that act he delivered to the purchaser the construction permit of the Board, as well as the blueprints.

(3) By deed No. 153 executed in Guayama on October 6, 1958 before Notary Ubaldo Aponte, Antonio Amaro sold to defendant-appellant, Hilda Ortiz Rolón, the aforementioned lot with the same description as that appearing in the preceding averment No. 1, in addition to the building already finished.

(4) According to the drawings of the lot which appear in the evidence with the longitudinal measurements stated in the different deeds of sale and in the segregation report of the Board, the lateral sides of 37.50 meters on the East and 28 meters on the West are parallel and both perpendicular to its front side of 12 meters on González Street, and it would form a perfect rectangle but for its rear side. The 180-meter lot described in the complaint, which plaintiffs allege was the one sold to Morales, would occupy the front portion of 12 meters with an alleged depth of 15 meters, forming a perfect rectangle. The area of 274 meters object of the suit would be the remainder of the lot up to the rear boundary.[1]

(5) Even though it has not been sent here with the documentary evidence, among the documents it had for making the decision the District Court mentioned defendants' Exhibit C, which was an assessment plan No. 420-041 of Guayama, dated August 6, 1949, in which the lot object of the

---

[1] There is an error in area in all the documents, which it seems nobody has noticed. The longitudinal measurements of the segregated lot which appear in the Report of the Board, as well as in the other deeds, give a correct area of 393 square meters instead of 454. The portion of 274 meters claimed by plaintiffs, according to their own measurements, has an area of 213 meters instead of 274.

suit is described with the same measurements as in plaintiffs' deed of sale No. 256 and in all the others.

(6) The oral evidence consisted of the testimony of Vicente Colón Morales, who testified that on December 30, 1954 the heirs of Girod sold him a parcel of land included in a lot situated on Enrique González Street; he bought 180 meters; he sold the lot to Antonio Amaro and he did not explain to him; he sold according to the marks that Girod gave him. On these marks he placed iron poles imbedded in concrete, enclosed on all sides. The Planning Board measured the land, which had already been fenced, in his presence. He fenced before the Planning Board came. The witness never measured. He paid $800 for the lot. The Planning Board said he should square the lot and Girod gave him a piece, free of charge, to square it. He could not determine whether the lot had the same shape as the drawing. He squared on the rear side.

Filiberto Santiago, Judge of the District Court, stated that he gave no credit to the witness' testimony in the sense that the latter bought 180 meters, and he relied on his own personal observation of the witness' manner of testifying. The witness was 75 years old. Judging from the rest of said testimony, it seems to us that the court did not lack ground for its conclusion.

Giving him credit, however, this witness does not support plaintiffs' position as to the nonexistence of a contract. According to his testimony and for the purpose of the subdivision sought, the Planning Board measured what the witness says was enclosed within the fencing wire and poles, and that he fenced according to the points or marks given to him by Girod when he sold him the piece of land at lump sum. On the other hand, since 1949 the lot appeared in an official assessment plan with the measurements with which it appears to have been sold to Colón Morales. For the reasons stated in the preceding subdivision (4) as to

the relative position of the lot sold and the one which plaintiffs allege they wanted to sell, it is unquestionable that had Girod sold only 180 meters of the 454 (exactly 393) meters in the lot, the result would have actually been a subsegregation of the lot segregated from the main property, without the apparent intervention or permit of the Board. According to the circumstances in the record, it is improbable that such a subdivision existed in the minds of the parties. There is the additional fact that Colón Morales immediately built a residence on the lot he bought by deed No. 256, for which he obtained the necessary permit of the Board. Pursuant to the regulations in force, subdivisions are not authorized for residences in lots of less than 300 meters, which also makes it improbable that he was granted a permit to construct on a lot of 180 meters.

■ Let us consider the law involved. Section 280 of the Civil Code, 1930 ed., provides that the owner holds a right of action against the holder and the possessor of the thing in order to recover it. The action at bar is but an action to recover possession of 274 (213 correctly) meters of the rear part of the lot of 454 (393) meters segregated and sold. The complaint does not request the payment of a higher price nor the rescission of the contract. The person who seeks to recover possession must be the proprietor or owner of the thing. *Cf. Banco Territorial y Agrícola* v. *Arvelo,* 7 P.R.R. 551 (1904); *Amy* v. *Amy,* 15 P.R.R. 387 (1909); *Gay* v. *Vega et al.,* 39 P.R.R. 584 (1939); *Gallardo* v. *Quintana,* 43 P.R.R. 154 (1932); *Sosa* v. *Fidalgo,* 56 P.R.R. 48 (1940); *Heirs of Arce* v. *Sierra,* 70 P.R.R. 803 (1950). Then, it is proper to determine whether or not there ever existed a contract of sale between the heirs of Girod and Colón Morales.

Section 1213 of the Civil Code, 1930 ed., provides that there is no contract unless there exist the consent of the contracting parties, a definite object which may be the sub-

ject of the contract, and a cause for the obligation which may be established. Consent is shown by the concurrence of the offer and acceptance of the thing and the cause which are to constitute the contract—§ 1214—and according to the record the parties in this case are not among the persons who cannot give consent—§ 1215. The object of the contract may be a thing determined with regard to its kind, and the indetermination of the amount is not an obstacle to its existence, provided it may be possible to determine it without necessity of a new agreement—§ 1225. The consideration of each contracting party is understood to mean, in what presently concerns us, the prestation or promise of a thing or service by the other party. Section 1226. Section 1227 provides that contracts without consideration or with an illicit one have no effect whatsoever, and a consideration is illicit when it is contrary to law and good morals. The statement of a false consideration in contracts shall render them void, unless it be proven that they were based on another real and licit one, and the existence of the consideration is always presumed, and that it is illicit, unless the debtor proves the contrary.—Sections 1228, 1229.

Pursuant to the law cited, it cannot be concluded, in the light of the evidence in the record, that there is non-existence of contract due to the radical absence of the necessary elements for its constitution. This is not a simulated contract, nor one with lack of consent, object, or consideration. *Cf. Hernández v. Ayala*, 68 P.R.R. 883 (1948); *González Rodríguez v. Fumero*, 38 P.R.R. 497 (1928); *Logia Caballeros del Plata v. García*, 63 P.R.R. 279 (1944); *García v. Central Alianza*, 69 P.R.R. 855 (1949); *Olivieri v. Tornabells*, 7 P.R.R. 92 (1904). As in *Goenaga v. O'Neill*, 85 P.R.R. 162, 205 (1962), here the main source of the juridical relations between the parties was the contract of sale executed between Girod and Colón, and the subsequent contracts executed up to defendant's acquisition. The nonexistence of

contract determined by the Superior Court does not appear from that evidence, nor from the oral evidence introduced. It being so, the doctrine of imprescriptibility of the action is not applicable to this case. *Santiago* v. *Rodríguez*, 72 P.R.R. 253 (1951); *Rivera* v. *Heirs of Díaz*, 70 P.R.R. 168 (1949); *González* v. *Heirs of Díaz*, 69 P.R.R. 598 (1949); *Boscio* v. *Vilá*, 67 P.R.R. 567 (1947); *Ramírez* v. *Ramírez*, 65 P.R.R. 510 (1946); *Logia Caballeros del Plata* v. *García*, *supra; Solá* v. *Castro et al.*, 32 P.R.R. 740 (1924); *González Rodríguez* v. *Fumero, supra; Rodríguez* v. *Heirs of Pirazzi*, 89 P.R.R. 494 (1963). The contract does not fall under a radical nullity for nonexistence of the juridical business. The rules of prescription are, then, applied.

Under the theory of the error alleged in the complaint, § 1252 of the Civil Code, 1930 ed., provides that contracts containing the requisites mentioned in § 1213 may be annulled whenever they contain any of the defects which invalidate them according to law.[2]

■ According to § 1217, the consent given by error shall be void, but in order that the error may invalidate the consent, it must refer to the substance of the thing object of the contract. Error is not presumed—*Mancheño* v. *Le Brun et al.*, 14 P.R.R. 461 (1908); *Capó* v. *Ramos*, 83 P.R.R. 625 (1961)—it being based on the principle of public interest of the *pacta sunt servanda*, and it was not proved by the record. Deed of Sale No. 256 stated not only the total area of the parcel of land sold of 454 (393) meters segregated from a larger property, but also its longitudinal measurements of 28 meters deep on one side, and 37.50 on the other, with a front of 12 meters. With these measurements it was easy to verify that 180 square meters was not the area of

---

[2] We do not consider applicable to this case the provisions of §§ 1358, 1359, and 1360 of the Civil Code, and consequently, inapplicable the limitation period fixed by § 1361.

the lot being sold, if this is the thing that the vendors had in mind.

We said in *Capó* v. *Ramos, supra,* that in order that an error may annul a juridical business it is necessary that the latter be excusable; that it be derived from acts of which the obligor is not aware, and that such unawareness could have been prevented by some prudence or diligence, and that it is not attributable either to the affected party or the one who invokes it. The inexcusable is presumed, then the excuse for the error must be duly proved.

▇ By virtue of the conveyance executed by deed No. 256 in favor of Colón, plaintiffs are not the owners of the parcel of land they seek to recover from the present owners. Failing to be owners, they have no cause for a revendication action, unless the aforementioned contract of sale is annulled in this action in what concerns the parcel of land in issue. Even granting plaintiffs all the benefit of an error in said contract, which might invalidate the consent, this action for nullity has prescribed, since the deed was executed on December 30, 1954 and the complaint was filed on March 21, 1960. Pursuant to § 1253 the action for nullity lasts 4 years, which in case of *error* commences to run from the date of the consummation of the contract.

The judgment rendered on appeal by the Superior Court, Guayama Part, will be reversed, and the record will be remanded to said court for another judgment affirming that of the District Court which dismissed the complaint.